Argued November 16, 1925.
The employees of the Lehigh Valley Railroad Company, in relaying tracks through the plaintiff's farm, threw pieces of wire, most of which it is claimed formed part of the signal appliances of the road, on bundles of corn which the plaintiff had cut and was about to remove to the silos on the farm. Some of these wires became entangled with the corn, and were ground up with it. Small pieces were afterwards found in the stomachs and other vital parts of the animals to whom the ensilage was fed. It was shown that the presence of the wire in the animals caused them to sicken and many of them to die. There were post mortems made of a number of the animals, and the fact that the wires caused the deaths, seems to have been very evident.
The defendants submitted several points, which the court refused without reading, which were to the effect *Page 491 
that the consideration of the jury should be limited to the time when the wire was thrown on the plaintiff's land when the corn was ready to be put in the silos, and not at any other time. The points might have been affirmed; the refusal of them did not constitute material error, if in fact, it was error. The court in its charge had already stated, "Now, that is the contention of the plaintiff; and, as we have said to you, if you find from the fair weight of the testimony that this wire found in these cattle was the cause of death or injury; that this wire came from the railroad company's right of way, and was thrown onto this cornfield while this corn was there and became mixed up with the corn and was conveyed from the field to the ensilage-cutter, and from the ensilage-cutter through the blow-pipe, into the silo, and that was the cause of the deaths." Further on, the court repeats that the claim of the plaintiff was that "after this corn was cut and bundled it was left in the field for some days, while the defendant company was laying steel rails, ...... and a few days later ...... the men employed by the defendant company threw some of it over into the plaintiff's field, and it clung to the corn when hauled out of the field." Whilst there was testimony as to the wire having been thrown at other times upon this property and neighboring property, it was not claimed that that wire had ever reached the vital organs of the cows. That proof was merely in anticipation of the defense that in accordance to the instructions of the company, the conduct of its employees showed that the wire was carefully collected and taken away upon cars and was never thrown upon adjoining properties. No one would assert, or was it so claimed, that the wire, which may have been upon the ground, before the relaying of the tracks, would, in some way or other, rise up and get into the bundles of corn. *Page 492 
The points the defendants submitted to the court, which asked the court to confine the plaintiff's recovery to the time when the tracks were relayed, were not called for by the exigencies of the case, and their refusal, as we have said before, was harmless.
Some of the animals on the farm were sold to a Dr. Marshall. He testifies that they died from the wire which was fed to them. The plaintiff contends that the finding by the jury that the wires got into the defendant's ensilage, through the defendant's ensilage-cutter, was but an inference, and the inference that the other cows died from the same cause would be piling an inference upon an inference. We cannot follow this reasoning. The employees of the defendant company cut the wire and there is evidence that it was thrown on plaintiff's field, where plaintiff's corn was lying in bundles, that the wires were carried into the ensilage, the wire was identified as that of the same kind used by the railroad and one piece still retained the shape it had when it was in place and formed part of the signal appliance of the railroad company. Further, the wire was fed to the cows in their fodder and found in their stomachs and other vital organs after their deaths. We can hardly call these facts such as merely support an inference. When such facts follow consecutively, and the wire is traced from the railroad to the bodies of the cows, we need infer nothing, as to what caused the trouble. If one of the links of the chain were missing, we might say that the conclusion was arrived at by an inference. From these facts, that these wires were found in the bodies of a number of cows, and that other cows were fed from the same ensilage, the inference drawn that they died from the same cause is neither far fetched nor untenable. The conclusion that they died from the same cause is fully borne out by the statement of Dr. Marshall, which is too long to insert here, but which fully *Page 493 
and intelligently states his opinion that as to these animals, "the foreign substance in the ensilage caused the deaths."
Some of the men who worked on the farm at the time the silos were filled, were not called as witnesses, and the court affirmed a point submitted by the defendant, that "where a party in litigation has within its power to produce evidence material to the cause of action being tried and which would aid the jury in reaching a correct conclusion and fails to call the witness or produce the evidence and does not explain its failure, the jury may presume that the evidence if produced would be unfavorable to the party." Following this point the plaintiff submitted a point which was to the same effect, but assumed that the men so employed had the opportunity to observe whether the wire was entangled in the corn and may have heard it passing through the ensilage-cutter, and blower-pipe, and that the plaintiff had failed to show what became of the fourteen cows sold to Dr. Marshall, etc. The court very properly refused this point, for it did not appear that these witnesses had the opportunity to observe whether the wire was entangled in the corn or that they might have heard the wire passing through the ensilage-cutter and blower-pipe. The men who testified did not hear it, and the reference to the cows sold to Dr. Marshall was an entirely different subject and had no relation to the other part of the point, and which we need not discuss, for, if any part of the point was improper, the court could negative the whole. We see no error in the court's refusal of this point.
There is some contention that the court's instructions to the jury did not limit the liability of the company to times when the employees were acting in the line of their duty, and that the court in its charge indicates that the defendants were liable to the acts of their employees without making this distinction. We *Page 494 
have already discussed the question as to limiting the plaintiff to the particular time when the wire was cast in the field. Although the appellant strenuously argues that the court is wrong in its statement, the reading of the testimony confirms us in the view that the court was right in its opinion in the motion for a new trial, in saying, "The whole evidence of the plaintiff was to the effect, that this old wire, which injured and killed her cows, was thrown into her field, and on this corn that had been cut, and was lying on the ground, by the employees of the defendant company, while working for the said company, and in the course of their employment, while removing the bond wire, from the old rails, and cleaning up the right of way of the old loose wire, etc. This was understood, and no question raised, to the contrary, during the whole trial."
The alleged contributory negligence of the plaintiff was not a matter of law for the court; it was properly left to the jury. The value of the animals was, we think, fixed in a proper manner. We see no reason why a person who has frequently seen a herd of cattle, and is acquainted with the market value, and who has shown his expertness, may not say that the average market value is a certain sum per head.
All the assignments of error are overruled and the judgment is affirmed.